## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 11 2017, 6:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Webb,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 11, 2017<br><br>Court of Appeals Case No.<br>49A02-1603-CR-632<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marc T. Rothenberg, Judge<br><br>Trial Court Cause No.<br>49G02-1307-MR-43402 |

**Pyle, Judge.**

# Statement of the Case

John Webb ("Webb") appeals his conviction by jury of murder[1] as well as the sentence imposed thereon. He argues that the evidence is insufficient to support his conviction because the State failed to prove his identity beyond a reasonable doubt and that his sixty-two (62) year sentence is inappropriate. Concluding that the evidence is sufficient and that his sentence is not inappropriate, we affirm.

We affirm.

# Issues

1. Whether there is sufficient evidence to support Webb's murder conviction:

2. Whether Webb's sentence is inappropriate.

# Facts

The facts most favorable to the verdict reveal that on June 7, 2012, Webb gave Kathy Beilouny ("Beilouny") a ride to the bank on his motor scooter. Beilouny cashed a check for $300.00 at approximately 12:20 p.m. Webb then drove Beilouny back to her house, where they smoked some crack cocaine.

At some point, Webb viciously attacked Beilouny with a knife. The attack started in the living room and continued into the kitchen. Webb stabbed

---

[1] IND. CODE § 35-42-1-1.

Beilouny forty times in the face and neck. Her carotid artery and jugular vein were "completely injured" on the left side of her body, causing extensive blood loss. (Tr. 196). Beilouny also suffered blunt-force injuries to her head and face as well as extensive bruising. She had defensive wounds on her arms, hands, and fingers. Beilouny died as a result of the knife injuries to her neck.

[5] Indianapolis Metropolitan Police Department ("IMPD") police and crime scene specialists were dispatched to Beilouny's house and found large amounts of blood in the kitchen and living room. They also noticed blood on the side door, porch stoop, and driveway. IMPD homicide detective Chris Craighill ("Detective Craighill") knew that the "blood . . . exiting the residence . . . wasn't [Beilouny's]." (Tr. 69). Specifically, Detective Craighill explained that because Beilouny died in the kitchen, "anything past that is not going to be hers." (Tr. 626).

[6] DNA testing of blood samples found on Beilouny, in her house, and on her driveway identified Webb's DNA. Specifically, Webb's DNA was found on the: (1) living room wall; (2) dining room table; (3) t-shirt Beilouny was wearing at the time of her death; (4) windowpane; (5) back door frame; (6) back door; and (7) driveway pavement. A swab of blood taken from the porch step revealed a mixture of Beilouny's and Webb's DNA. Webb's DNA was also found under Beilouny's finger nails. Police officers did not find any cash in Beilouny's house. After hearing the evidence, the jury convicted Webb of murder.

Webb's presentence investigation report revealed that he has a criminal history that spans twenty-five years and includes one misdemeanor conviction for false reporting and seven felony convictions, one for forgery and six for theft. He also has six probation revocations and three home detention revocations. At the sentencing hearing, the trial court stated as follows regarding the horrific nature of the offense:

> The scene of this crime was something out of a horror movie. It was violent. It was brutal. It was animalistic. It was – I mean, it was clear to me from that evidence that I viewed that Ms. Beilouny went through – her attack was more than simply a murder. It was a nightmarish ordeal that she went through.

(Tr. 996). Following the sentencing hearing, the trial court sentenced Webb to sixty-two (62) years executed at the Department of Correction. Webb now appeals his conviction and sentence.

# Decision

## 1. Sufficiency of the Evidence

Webb first argues that there is insufficient evidence to support his conviction because the State failed to prove his identity beyond a reasonable doubt. Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime proven

beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147.

[9] Webb cites *Brink v. State*, 837 N.E.2d 192, 194 (Ind. Ct. App. 2005), *trans. denied*, in support of his argument that his "'mere presence at the crime scene with the opportunity to commit the crime is not a sufficient basis on which to support a conviction.'" (Webb's Br. 14). According to Webb, "the circumstantial evidence establishes no more than what Mr. Webb told to the police and testified to at trial: that he was with Kathy Beilouny and in her house shortly before she died." (Webb's Br. 14).

[10] However, we agree with the State that "[a]mple evidence supported the jury's conclusions that [Webb] was the individual who committed Beilouny's murder." (State's Br. 11). Specifically, our review of the evidence reveals that Webb's DNA was found throughout the bloody crime scene, including the living room and dining room as well as on the t-shirt that Beilouny was wearing at the time of her murder. Webb's DNA was also found on the back door frame, the exterior back door, and on the driveway pavement. In addition, Webb's DNA was found under Beilouny's fingernails. This evidence is sufficient to establish Webb's identity beyond a reasonable doubt and to support his murder conviction.

[11] Webb's argument that he left his blood throughout the house after he cut his hand and shook it while screaming, and his theory that Beilouny had his DNA under her fingernails because he was not wearing a shirt when she was holding

on to him on his motor scooter are nothing more than requests that we reweigh the evidence. This we will not do. *See Drane*, 867 N.E.2d at 146. There is sufficient evidence to support Webb's conviction.

**2. Sentence**

[12] Webb also argues that his sixty-two year sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[13] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Webb was convicted of murder. The sentencing range for murder is from forty-five (45) to sixty-five (65) years, with an advisory sentence of fifty-five (55) years. I.C. § 35-50-2-3. The trial court sentenced Webb to sixty-two (62) years, which is less than the maximum sentence.

With regard to the nature of the offense, the trial court pointed out at the sentencing hearing that the crime scene was something akin to a horror movie. There were large amounts of blood throughout the house and a trail of blood out of the house and onto the driveway. The trial court further explained that from the evidence that it reviewed, it was evident that Beilouny suffered through a "nightmarish ordeal" during the violent and brutal attack, which resulted in her death. (Tr. 997).

With regard to his character, Webb has a criminal history that spans twenty-five years. He has seven prior felony convictions, including one for forgery and six for theft. He also has one prior misdemeanor conviction for false reporting. In addition, he has six probation revocations and three home detention revocations. Clearly, Webb's former contacts with the law have not caused him to reform himself. *See Jenkins v. State*, 909 N.E.2d 1080, 1086 (Ind. Ct. App. 2009), *trans. denied*. Based on the nature of the offense and his character, Webb has failed to persuade this Court that his sixty-two year sentence for murder is inappropriate.

Affirmed.

Bradford, J., and Altice, J., concur.